**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| Bank of Hope, | ) | |
| | ) | No. 18-cv-5058 |
| Plaintiff, | ) | |
| | ) | Assigned Judge: |
| | ) | |
| v. | ) | Magistrate Judge: |
| | ) | |
| Kyung Eun Hwang a/k/a Kyung E. | ) | Property: 5455 North Sheridan, Unit |
| Hwang, James Hwang Jr. a/k/a Jim | ) | 2605, Chicago, IL 60640 |
| Hwang, James R. Hwang a/k/a James | ) | |
| Hwang, Chicago Car Collection, Inc f/k/a | ) | |
| Luxury Automotive Wholesalers, Inc. | ) | |
| | ) | |
| Defendants | ) | |

**COMPLAINT TO FORECLOSE**
**MORTGAGE AND FOR OTHER RELIEF**

Now comes plaintiff, Bank of Hope (hereinafter "Plaintiff"), by its attorneys,

Ashen│Faulkner, and complains of the defendants, Kyung Eun Hwang a/k/a Kyung E.

Hwang, James Hwang Jr. a/k/a Jim Hwang, James R. Hwang a/k/a James Hwang, and

Chicago Car Collection, Inc f/k/a Luxury Automotive Wholesalers, Inc, and states as

follows:

**JURISDICTION & VENUE**

1.      Bank of Hope is a California-state chartered banking association, the main

office of which is located in the State of California and organized under the laws of the

State of California.  In August 2013 the Comptroller of Currency certified the merger of

Foster Bank and BBCN Bank.  Thereafter, BBCN Bank and Wilshire Bank merged to

create Bank of Hope. A true and correct copy of the bank succession is attached hereto as

Plaintiff's **Exhibit A**."

2.      This Court has original subject matter jurisdiction in the above-captioned case pursuant to 28 U.S.C. 1332(a) because the matter in controversy is between citizens of different states and the damages claimed exceed the sum of $75,000.00, exclusive of interests and costs.

3.      This Court has personal jurisdiction over each Defendant pursuant to 735 ILCS 5/2-209(a) and (b).

4.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b).

5.      James Hwang Jr. a/k/a Jim Hwang (hereinafter "James Hwang Jr.") is a citizen of the State of Illinois and was at all times referenced in this complaint a resident of the State of Illinois.

6.      Kyung Eun Hwang a/k/a Kyung E. Hwang (hereinafter Kyung E. Hwang") is a citizen of the State of Illinois and was at all times referenced in this complaint a resident of the State of Illinois.

7.      James R. Hwang a/k/a James Hwang (hereinafter "James R. Hwang") is a citizen of the State of Illinois and was at all times referenced in this complaint a resident of the State of Illinois.

8.      Chicago Car Collection, Inc f/k/a Luxury Automotive Wholesalers, Inc. (hereinafter "Chicago Car Collection") is an Illinois corporation with its principal place of business in Chicago, Illinois.

## COUNT I - MORTGAGE FORECLOSURE

9.      Plaintiff files this Complaint to foreclose the mortgage on the property commonly known as 5455 North Sheridan, Unit 2605, Chicago, IL 60640 and joins the following persons as defendants: James Hwang Jr., Kyung E. Hwang, James R. Hwang,

and Chicago Car Collection (hereinafter collectively "Defendants"). The mortgage as modified by a Mortgage Amendment Agreement on July 17, 2006, an Extension and Modification Agreement on July 17, 2007, an Extension and Modification Agreement on July 17, 2008, and an Extension and Modification Agreement on September 28, 2009 shall herein be referred to as the "Mortgage." A true and correct copy of the Mortgage is attached hereto as "**Exhibit B**."

      10.     Information concerning Mortgage:

      a.   Nature of instrument:  Mortgage

      b.   Date of mortgage:  September 3, 2004

      c.   Name of mortgagor(s): Kyung E. Hwang; James Hwang Jr.

      d.   Name of mortgagee: Bank of Hope pursuant to the Merger Agreement attached as Exhibit A

      e.   Date and place of recording:  October 4, 2004 with the Cook County Recorder of Deeds.

      f.   Identification of recording: Document No: 0427844038

      g.   Interest subject to mortgage: 100% fee simple

      h.   Amount of original indebtedness, as modified by subsequent advances made under mortgage:  $325,000.00

      i.   Both the legal description of mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

Commonly Known As:       5455 North Sheridan, Unit 2605, Chicago, IL 60640

Legal Description:

UNIT NUMBER 2605 IN THE 5455 EDGEWATER PLAZA CONDOMINIUM, AS
DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL
ESTATE:
PART OF THE SOUTH 242 FEET OF THE NORTH 875 FEET OF THE EAST
FRACTIONAL 1/2 OF THE NORTHEAST 1/4 OF SECTION 8, TOWNSHIP 40
NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK
COUNTY, ILLINOIS. WHICH SURVEY IS ATTACHED AS EXHIBIT 'A' TO THE
DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT 24870735,
TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON
ELEMENTS, IN COOK COUNTY, ILLINOIS.
14-08-203-016-1287
5455 N. SHERIDAN, UNIT 2605, CHICAGO, IL 60640

Permanent Identification No.: 14-08-203-016-1287

     j.  Statements as to default:

       Date of Default:                        December 17, 2017

       Amount past due as of July 23, 2018:     $21,320.16

     k.  Statement as to unpaid principal, interest, other charges and total

       accelerated amount due as of July 23, 2018:   $201,479.51

     l.  Statement as to per diem interest accruing under mortgage after default:

       $38.31

     m. Name of present owner of the real estate: Kyung E. Hwang; James Hwang

       Jr.

     n.  Names of other persons who are joined as defendants and whose interest

       in or lien on the mortgaged real estate is sought to be terminated:   N/A

     o.  Capacity in which plaintiff brings this foreclosure:

       Plaintiff is the legal holder of the Mortgage and Note.

     p.  Facts in support of request for attorneys' fees and of costs and expenses:

Pursuant to Mortgage, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in Mortgage, including all reasonable attorneys' fees and costs.

q.  The names of defendants whose rights to possess the mortgaged real estate after the confirmation of a foreclosure sale is sought to be terminated: Kyung E. Hwang; James Hwang Jr.;

r.  Facts in Support of a shortened redemption period; or that the right of redemption was waived:   N/A

s.  Facts in Support of a shortened reinstatement period; or that the right of reinstatement was waived:   N/A

t.  Facts in support of a request for appointment of mortgagee in possession or appointment of a receiver:

Plaintiff reserves its right to be placed as a mortgagee in possession or have a receiver appointed at a later date.

Plaintiff requests:

(i)     A judgment to foreclose and sale.

(ii)    A personal judgment for a deficiency, if sought.

(iii)   An order granting possession, if sought.

(iv)    A Judgment for attorneys' fees, costs, and expenses.

(v)     An order granting or waiving a shortened reinstatement and/or redemption period, if sought.

(vi)    An order placing the Mortgagee in possession or appointing a receiver, if sought.

(vii)   Such other relief as this court may deem just and equitable.

## COUNT II - BREACH OF NOTE

11.     Plaintiff re-alleges and re-states paragraphs 1 through 10 as paragraph 11 of Count II.

12.     On September 3, 2004, Chicago Car Collection executed a Promissory Note in favor of Plaintiff in the original amount of $150,000.00. The Promissory Note, as amended by an Amendment/Extension to Revolving Credit Note on December 29, 2005, an Amendment/Extension to Revolving Credit Note on July 17, 2006, an Amendment/Extension to Revolving Credit Note on July 17, 2007, an Amendment/Extension to Revolving Credit Note on July 17, 2008, an Amendment/Extension to Adjustable Rate Installment Note on August 28, 2009, and an Amendment/Extension to Adjustable Rate Installment Note on September 9, 2009 shall herein be referred to as the "Note." A true and correct copy of the Note is attached hereto as "**Exhibit C**."

13.     On or about August, 2009, Luxury Automotive Wholesalers, Inc. changed its name to Chicago Car Collection, Inc. A true and correct copy of the Notice of Name Change is attached hereto as "**Exhibit D**."

14.     On August 28, 2009, Chicago Car Collection, Inc. ("Borrower") executed that Amendment/Extension to the Note in favor of Plaintiff in the amount of $324,302.00.

15.     Plaintiff is the holder and owner of Note.  Plaintiff has performed all the obligations on its part to be performed under Note.

16.     The Note is in default, the Borrower having failed to make the December 17, 2017 payment, and each payment thereafter.  There is due from the Borrower, as of

July 23, 2018 the amount of $201,479.51 which includes unpaid principal, interest, late fees and costs.

17. Interest continues to accrue after July 23, 2018 at the rate of $38.31 per day.

18. Plaintiff has demanded that Borrower fulfill its obligation under the Note; however, Borrower has refused, and continues to refuse, to fulfill its obligations under Note.

19. The Note states that Borrower shall pay all court costs and attorneys' fees in the event of a default under Note to Plaintiff in collecting the sums owed.

**WHEREFORE**, Plaintiff, Bank of Hope, requests this Court to enter Judgment in its favor and against Chicago Car Collection, Inc f/k/a Luxury Automotive Wholesalers, Inc and in the amount of $201,479.51, plus costs, reasonable attorneys' fees and interest from July 23, 2018 through the date of Judgment, and to grant such further or other relief as this Court may deem just or equitable.

## COUNT III - BREACH OF GUARANTY – JAMES HWANG JR.

20. Plaintiff re-alleges and re-states paragraphs 1 through 19 as paragraph 20 of Count III.

21. To induce Plaintiff to enter into the Note, James Hwang Jr. executed an Unconditional Guaranty on December 29, 2005, as restated on July 17, 2006, July 17, 2007, July 17, 2008 and August 28, 2009 ( "Hwang Jr. Guaranty") under which he

unconditionally and absolutely guaranteed full and prompt payment under the Note. A true and correct copy of the Hwang Jr. Guaranty is attached hereto as "**Exhibit E**."

22.     As a result of Borrower's default on the Note, as of July 23, 2018, there remains due and owing $201,479.51, and pursuant to the Hwang Jr. Guaranty, James Hwang Jr. is liable for the same.

23.     James Hwang Jr. also remains liable for additional late charges, interest, attorneys' fees, and costs incurred in enforcing the Note and Hwang Jr. Guaranty.

24.     Although demand was made on James Hwang Jr. to pay the sums due and owing, James Hwang Jr. has failed and refused to pay said amount, James Hwang Jr. is therefore in default of the Hwang Jr. Guaranty.


     **WHEREFORE**, Plaintiff, Bank of Hope requests this Court to enter Judgment in its favor and against James Hwang Jr. in the amount of $201,479.51 plus costs, reasonable attorneys' fees, and interest from July 23, 2018 through the date of Judgment, and to grant such further or other relief as this Court may deem just or equitable.


## COUNT IV - BREACH OF GUARANTY – KYUNG EUN HWANG

25.      Plaintiff re-alleges and re-states paragraphs 1 through 24 as paragraph 25 of Count IV.

26.     To induce Plaintiff to enter into the Note, Kyung E. Hwang executed an Unconditional Guaranty on December 29, 2005, as restated on July 17, 2007, July 17, 2008, and August 28, 2009 ("Kyung E. Hwang Guaranty") under which she

unconditionally and absolutely guaranteed full and prompt payment under the Note. A true and correct copy of the Kyung E. Hwang Guaranty is attached hereto as "**Exhibit F**."

27.     As a result of Borrower's default on the Note, as of July 23, 2018, there remains due and owing $201,479.51, and pursuant to the Kyung E. Hwang Guaranty, Kyung E. Hwang is liable for the same.

28.     Kyung E. Hwang also remains liable for additional late charges, interest, attorneys' fees, and costs incurred in enforcing the Note and Kyung E. Hwang Guaranty.

29.     Although demand was made on Kyung E. Hwang to pay the sums due and owing, Kyung E. Hwang has failed and refused to pay said amount, Kyung E. Hwang is therefore in default of the Kyung E. Hwang Guaranty.

**WHEREFORE**, Plaintiff, Bank of Hope requests this Court to enter Judgment in its favor and against Kyung E. Hwang a/k/a Kyung Eun Hwang in the amount of $201,479.51 plus costs, reasonable attorneys' fees, and interest from July 23, 2018 through the date of Judgment, and to grant such further or other relief as this Court may deem just or equitable.

## COUNT V - BREACH OF GUARANTY – JAMES R. HWANG A/K/A JAMES HWANG

30.     Plaintiff re-alleges and re-states paragraphs 1 through 29 as paragraph 30 of Count V.

31.     To induce Plaintiff to enter into the Note, James R. Hwang executed an Unconditional Guaranty on July 17, 2007, as restated on July 17, 2008, and August 28, 2009 ("James R. Hwang Guaranty") under which he unconditionally and absolutely

guaranteed full and prompt payment under the Note. True and correct copy of the James

R. Hwang Guaranty is attached hereto as "**Exhibit G**."

32.     As a result of Borrower's default on the Note, as of July 23, 2018, there

remains due and owing $201,479.51, and pursuant to the James R. Hwang Guaranty,

James R. Hwang is liable for the same.

33.     James R. Hwang also remains liable for additional late charges, interest,

attorneys' fees, and costs incurred in enforcing the Note and James R. Hwang Guaranty.

34.     Although demand was made on James R. Hwang to pay the sums due and

owing, James R. Hwang has failed and refused to pay said amount, James R. Hwang is

therefore in default of the James R. Hwang Guaranty.

**WHEREFORE**, Plaintiff, Bank of Hope requests this Court to enter Judgment in

its favor and against James R. Hwang a/k/a James Hwang in the amount of $201,479.51

plus costs, reasonable attorneys' fees, and interest from July 23, 2018 through the date of

Judgment, and to grant such further or other relief as this Court may deem just or

equitable.


ASHEN | FAULKNER,


BY:/s/ Alexander E. Porter

Attorney for Plaintiff
217 N Jefferson Street, Ste. 601
Chicago, IL 60661
(312) 655-0800
ARDC No.

<u>B</u>ANK OF <u>H</u>OPE V. <u>K</u>YUNG <u>E</u>UN <u>H</u>WANG A/K/A <u>K</u>YUNG <u>E</u>. <u>H</u>WANG,
<u>*ET AL*</u>

**EXHIBIT A**

. . APPROVED
July 30, 2013
Jan Lynn Owen
Commissioner of
Business Oversight

By *[signature]* W 1
Wallace M. Wong
Senior Counsel

**FILED**
12:02 a.m. Pacific Time August 13, 2013
Jan Lynn Owen
Commissioner of Business Oversight
State of California

By *[signature]*
Wallace M. Wong
Senior Counsel

A07442©®

**FILED** *[handwritten]* D4
**Secretary of State**
**State of California**

AUG 0 7 2013

*[handwritten] 3 u*

*1338540 SUIV*

## AGREEMENT OF BANK MERGER

This AGREEMENT OF BANK MERGER, dated as of July 24, 2013 (this "Bank Merger Agreement"), is entered into between BBCN Bank ("Acquirer Bank"), a California state-chartered bank and a wholly-owned subsidiary of BBCN Bancorp, Inc., a Delaware corporation ("BBCN"), and Foster Bank ("Target Bank"), an Illinois state-chartered commercial bank and a wholly owned subsidiary of Foster Bankshares, Inc., a Delaware corporation ("Foster"). Acquirer Bank and Target Bank are sometimes referred to herein collectively as the "Parties" and individually as a "Party."

WHEREAS, BBCN, Won Merger Sub Corp., a Delaware corporation ("Merger Sub"), and Foster entered into an Agreement and Plan of Merger, dated as of April 15, 2013 (the "Holding Company Merger Agreement"), providing, among other things, for the merger of Merger Sub with and into Foster (the "Merger");

WHEREAS, in connection with the Merger, BBCN and Foster desire to merge Target Bank with and into Acquirer Bank (the "Bank Merger") concurrently with or as soon as reasonably practicable after the consummation of the Merger upon the terms and subject to the conditions set forth in this Bank Merger Agreement and the Holding Company Merger Agreement; and

WHEREAS, the Parties intend that for federal income tax purposes the Bank Merger shall qualify as a "reorganization" within the meaning of Section 368(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and that this Bank Merger Agreement shall constitute a "plan of reorganization" for purposes of Sections 354 and 361 of the Code;

NOW, THEREFORE, in consideration of the foregoing and the respective representations, warranties, covenants and agreements set forth in this Bank Merger Agreement and the Holding Company Merger Agreement, subject to the conditions set forth in this Bank Merger Agreement and the Holding Company Merger Agreement, and intending to be legally bound hereby, the Parties agree as follows:

1.     Effective Time. Upon the terms and subject to the conditions set forth in this Bank Merger Agreement and the Holding Company Merger Agreement, concurrently with or as soon as reasonably practicable after the consummation of the Merger, Acquirer Bank and Target Bank shall cause the Bank Merger to be consummated by (i) filing a copy of this Bank Merger Agreement, certified by the Secretary of State of the State of California pursuant to Section 1103 of the California General Corporation Law (the "CGCL"), with the Department of Business Oversight of the State of California pursuant to Section 4887 of the California Financial Code and (ii) filing a copy of this Bank Merger Agreement, together with all other required documents and information, pursuant to Chapter 205, Section 5/24 of the Illinois Compiled Statutes (the "ILCS") with the Illinois Department of Financial and Professional Regulation. The Bank Merger shall become effective as provided in Section 4887 of the California Financial Code (the "Effective Time").

2.    The Merger. Acquirer Bank shall be the surviving bank in the Bank Merger (the "Surviving Bank"). At the Effective Time, Target Bank shall be merged with and into Acquirer Bank and the separate existence of Target Bank shall cease. The Bank Merger shall be governed by, and shall have the effects set forth in, the CGCL and the ILCS.

3.    Effects of the Merger.

(a)    At the Effective Time, the Surviving Bank shall succeed, without other transfer, to all the rights and properties, and shall be subject to all the debts and liabilities, of Target Bank, and the separate existence of Acquirer Bank, with all its purposes, objects, rights, powers, privileges, liabilities, obligations and franchises, shall continue unaffected and unimpaired by the Bank Merger.

(b)    The articles of incorporation (as amended effective as of the Effective Time to reflect the new name of the Surviving Bank) and the bylaws of Acquirer Bank, as in effect as of the Effective Time, shall be the articles of incorporation and bylaws of the Surviving Bank, until thereafter altered, amended or repealed in accordance with their terms and applicable law.

(c)    The shares of Target Bank common stock, $20.00 par value per share ("Target Bank Common Stock") and the shares of Acquirer Bank common stock, no par value per share ("Acquirer Bank Common Stock"), shall be treated as follows at the Effective Time: (i) each share of Target Bank Common Stock issued and outstanding immediately prior to the Effective Time shall be automatically canceled without consideration and cease to be an issued and outstanding share of Target Bank Common Stock; and (ii) each share of Acquirer Bank Common Stock issued and outstanding immediately prior to the Effective Time shall remain issued and outstanding.

4.    Directors and Officers of the Surviving Bank. The directors and officers of Acquirer Bank shall be the directors and officers of the Surviving Bank without change in title or authority, but subject to the authority and power of the board of directors and the sole stockholder of the Surviving Bank to add directors or officers to, or otherwise modify, the board of directors or number, titles and authority of the officers of the Surviving Bank.

5.    Procurement of Approvals. This Bank Merger Agreement shall be subject to the approval of BBCN, as the sole stockholder of Acquirer Bank, and Foster, as the sole stockholder of Target Bank, at meetings to be called and held or by consent in lieu thereof in accordance with the applicable provisions of law and their respective organizational documents. Acquirer Bank and Target Bank shall use their commercially reasonable best efforts to proceed expeditiously and cooperate fully in the procurement of any other consents and approvals and in the taking of any other action, and the satisfaction of all other requirements prescribed by applicable law or otherwise necessary for the consummation of the Bank Merger on the terms provided herein, including, without limitation, the preparation and submission of such applications or other filings for approval of the Bank Merger as may be required by applicable laws and regulations.

6.    Conditions Precedent. The obligations of the Parties under this Bank Merger Agreement shall be subject to: (a) the approvals of this Bank Merger Agreement by BBCN, as

the sole stockholder of Acquirer Bank, and by Foster, as the sole stockholder of Target Bank, at meetings duly called and held or by consent or consents in lieu thereof, in each case without any exercise of such dissenters' rights as may be applicable; (b) receipt of approval of the Bank Merger from all governmental and banking authorities whose approval is required by applicable laws and regulations; and (c) the consummation of the Merger pursuant to the Holding Company Merger Agreement at or before the Effective Time.

7.    General Provisions.

(a)    Termination and Agreement. The obligations of the Parties to effect the Bank Merger shall be subject to all the terms and conditions contained in the Holding Company Merger Agreement. This Bank Merger Agreement shall terminate, without any further action of any Party, notwithstanding stockholder approval, in the event that the Holding Company Merger Agreement shall be terminated as provided therein prior to the Effective Time.

(b)    Amendment. This Bank Merger Agreement may not be amended, modified or supplemented except by an instrument in writing signed on behalf of each of the Parties at any time prior to the Effective Time.

(c)    Successors and Assigns. This Bank Merger Agreement shall be binding upon and enforceable by the Parties and their respective successors and permitted assigns, but this Bank Merger Agreement may not be assigned by any Party, by operation of law or otherwise, without the prior written consent of the other Party.

(d)    Governing Law. This Bank Merger Agreement shall be governed by and construed in accordance with the laws of the State of California (without giving effect to choice of law principles thereof).

(e)    Counterparts. This Bank Merger Agreement may be executed in counterparts (which counterparts may be delivered by facsimile or other commonly used electronic means), each of which shall be considered one and the same agreement and shall become effective when both counterparts have been signed by each of the Parties and delivered to the other Party, it being understood that both Parties need not sign the same counterpart.

*[Signature page follows.]*

IN WITNESS WHEREOF, the Parties have caused this Bank Merger Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

BBCN Bank

By: _____
    Name: Soo Bong Min
    Title: President and Chief Executive Officer

By: _____
    Name: Juliet Stone
    Title: Secretary

Foster Bank

By: _____
    Name: Paul B. Kim
    Title: President

By: _____
    Name: Kurt C. Felde
    Title: Secretary

IN WITNESS WHEREOF, the Parties have caused this Bank-Merger Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

BBCN Bank

By: _____
    Name: Soo Bong Min
    Title: President and Chief Executive Officer

By: _____
    Name: Juliet Stone
    Title: Secretary

Foster Bank

By: _____
    Name: Paul B. Kim
    Title: President

By: _____
    Name: Kurt C. Felde
    Title: Secretary

IN WITNESS WHEREOF, the Parties have caused this Bank Merger Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

BBCN Bank

By: _____
Name: Soo Bong Min
Title: President and Chief Executive Officer

By: _____
Name: Juliet Stone
Title: Secretary

Foster Bank

By: _____
Name: Paul B. Kim
Title: President

By: _____
Name: Kurt C. Felde
Title: Secretary

IN WITNESS WHEREOF, the Parties have caused this Bank Merger Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

BBCN Bank

By: _____
      Name: Soo Bong Min
      Title: President and Chief Executive Officer

By: _____
      Name: Juliet Stone
      Title: Secretary


Foster Bank

By: _____
      Name: Paul B. Kim
      Title: President

By: _____
      Name: Kurt C. Felde
      Title: Secretary

APPROVED
July 25, 2016
Jan Lynn Owen
Commissioner of
Business Oversight

By *Wallace M Wong*
Wallace M. Wong
Senior Counsel

A07868986

1338540 SURV

FILED
Secretary of State
State of California

JUL 29 2016

## AGREEMENT OF BANK MERGER

THIS AGREEMENT OF BANK MERGER, dated as of July 25, 2016 (this "Bank Merger Agreement"), is entered into between Wilshire Bank, a California state-chartered bank and a wholly owned subsidiary of Wilshire Bancorp, Inc., a California corporation ("WIBC"), and BBCN Bank, a California state-chartered bank and a wholly owned subsidiary of BBCN Bancorp, Inc., a Delaware corporation ("BBCN"). Wilshire Bank and BBCN Bank are sometimes referred to herein collectively as the "Parties" and individually as a "Party."

WHEREAS, WIBC and BBCN entered into an Agreement and Plan of Merger, dated as of December 7, 2015 (the "Agreement"), providing, among other things, for the merger of WIBC with and into BBCN, with BBCN surviving (the "Merger");

WHEREAS, in connection with the Merger, WIBC and BBCN desire to merge Wilshire Bank with and into BBCN Bank (the "Bank Merger") concurrently with or as soon as reasonably practicable after the consummation of the Merger upon the terms and subject to the conditions set forth in this Bank Merger Agreement and the Agreement; and

WHEREAS, for federal and, if applicable, state and local income tax purposes, the Parties intend that the Bank Merger shall qualify as a "reorganization" under Section 368(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and this Agreement shall constitute a "plan of reorganization" within the meaning of the Code.

NOW, THEREFORE, in consideration of the foregoing and the respective representations, warranties, covenants and agreements set forth in this Bank Merger Agreement and the Agreement, subject to the conditions set forth in this Bank Merger Agreement and the Agreement, and intending to be legally bound hereby, the Parties agree as follows:

1. Effective Time. Upon the terms and subject to the conditions set forth in this Bank Merger Agreement and the Agreement, concurrently with or as soon as reasonably practicable after the consummation of the Merger, Wilshire Bank and BBCN Bank shall cause the Bank Merger to be consummated by filing a copy of this Bank Merger Agreement, certified by the Secretary of State of the State of California pursuant to Section 1103 of the California General Corporation Law (the "CGCL"), with the Commissioner of Business Oversight of the State of California pursuant to Section 4887 of the California Financial Code (the "CFC"). The Bank Merger shall become effective at the close of business at 5:02 pm Pacific Daylight Time on the date of such filing (the "Effective Time").

2. The Merger. BBCN Bank shall be the surviving bank in the Bank Merger (the "Surviving Bank"). At the Effective Time, Wilshire Bank shall be merged with and into BBCN Bank and the separate existence of Wilshire Bank shall cease. The Bank Merger shall be governed by, and shall have the effects set forth in, the CGCL and the CFC.

FILED
5:02 p.m. Pacific Time
July 29, 2016
Jan Lynn Owen
Commissioner of Business Oversight
State of California

By *Wallace M Wong*
Wallace M. Wong
Senior Counsel

la-1304419

3.     Effects of the Merger.

(a)     At the Effective Time, Article One of the Articles of Incorporation of BBCN Bank, as amended, shall be amended in its entirety to read as follows:

"ARTICLE ONE. NAME: The name of this Corporation is Bank of Hope."

(b)     At the Effective Time, the Surviving Bank shall succeed, without other transfer, to all the rights and properties, and shall be subject to all the debts and liabilities, of Wilshire Bank, and the separate existence of BBCN Bank, with all its purposes, objects, rights, powers, privileges, liabilities, obligations and franchises, shall continue unaffected and unimpaired by the Bank Merger.

(c)     The Articles of Incorporation (as amended effective as of the Effective Time to reflect the new name of the Surviving Bank pursuant to Section 3(a)) and the Bylaws of BBCN Bank, as in effect as of the Effective Time, shall be the Articles of Incorporation and Bylaws of the Surviving Bank, until thereafter altered, amended or repealed in accordance with their terms and applicable law.

(d)     The shares of BBCN Bank common stock, no par value per share ("BBCN Bank Common Stock") and the shares of Wilshire Bank common stock, no par value per share ("Wilshire Bank Common Stock") shall be treated as follows at the Effective Time: (i) each share of BBCN Bank Common Stock issued and outstanding immediately prior to the Effective Time shall remain an issued and outstanding share of BBCN Bank Common Stock; and (ii) each share of Wilshire Bank Common Stock issued and outstanding immediately prior to the Effective Time shall be automatically canceled by operation of law without consideration and cease to be an issued and outstanding share of Wilshire Bank Common Stock.

4.     Directors and Officers of the Surviving Bank.  On or prior to the Effective Time, BBCN Bank shall cause the number of directors that shall comprise the board of directors of the Surviving Bank at the Effective Time to be 16.  Of the members of the initial board of directors of the Surviving Bank at the Effective Time, nine (9) shall be current members of the board of directors of BBCN Bank as designated by BBCN Bank prior to the Effective Time, and seven (7) shall be current members of the board of directors of Wilshire Bank as designated by Wilshire Bank prior to the Effective Time.

5.     Procurement of Approvals.  This Bank Merger Agreement shall be subject to the approval of WIBC, as the sole shareholder of Wilshire Bank, and BBCN, as the sole shareholder of BBCN Bank, at meetings to be called and held or by consent in lieu thereof in accordance with the applicable provisions of law and their respective organizational documents.  Wilshire Bank and BBCN Bank shall use their commercially reasonable best efforts to proceed expeditiously and cooperate fully in the procurement of any other consents and approvals and in the taking of any other action, and the satisfaction of all other requirements prescribed by applicable law or otherwise necessary for the consummation of the Bank Merger on the terms provided herein, including, without limitation, the preparation and submission of such applications or other filings for approval of the Bank Merger as may be required by applicable laws and regulations.

6.  Conditions Precedent. The obligations of the Parties under this Bank Merger Agreement shall be subject to: (a) the approvals of this Bank Merger Agreement by WIBC, as the sole shareholder of Wilshire Bank, and BBCN, as the sole shareholder of BBCN Bank, at meetings duly called and held or by consent or consents in lieu thereof, in each case without any exercise of such dissenters' rights as may be applicable; (b) receipt of approval of the Bank Merger from all governmental and banking authorities whose approval is required by applicable laws and regulations; and (c) the consummation of the Merger pursuant to the Agreement at or before the Effective Time.

7.  General Provisions.

(a)  Termination and Agreement. The obligations of the Parties to effect the Bank Merger shall be subject to all the terms and conditions contained in the Agreement. This Bank Merger Agreement shall terminate, without any further action of any Party, notwithstanding shareholder approval, in the event that the Agreement shall be terminated as provided therein prior to the Effective Time.

(b)  Amendment. This Bank Merger Agreement may not be amended, modified or supplemented except by an instrument in writing signed on behalf of each of the Parties at any time prior to the Effective Time.

(c)  Successors and Assigns. This Bank Merger Agreement shall be binding upon and enforceable by the Parties and their respective successors and permitted assigns, but this Bank Merger Agreement may not be assigned by any Party, by operation of law or otherwise, without the prior written consent of the other Party.

(d)  Governing Law. This Bank Merger Agreement shall be governed by and construed in accordance with the laws of the State of California (without giving effect to choice of law principles thereof).

(e)  Counterparts. This Bank Merger Agreement may be executed in counterparts (which counterparts may be delivered by facsimile or other commonly used electronic means), each of which shall be considered one and the same agreement and shall become effective when both counterparts have been signed by each of the Parties and delivered to the other Party, it being understood that both Parties need not sign the same counterpart.

[Remainder of this page intentionally left blank]

la-1304419

3

IN WITNESS WHEREOF, Wilshire Bank and BBCN Bank have caused this Bank Merger Agreement to be signed by their respective officers thereunto duly authorized, all as of the date first set forth above.

WILSHIRE BANK

By: _____
Name: Jae Whan Yoo
Title: President & Chief Executive Officer

By: _____
Name: Lisa K. Pai
Title: Secretary


BBCN BANK

By: _____
Name: Kevin S. Kim
Title: President & Chief Executive Officer

By: _____
Name: David W. Kim
Title: Secretary

[Signature Page to Agreement of Bank Merger]

la-1304419.

A0786896

IN WITNESS WHEREOF, Wilshire Bank and BBCN Bank have caused this Bank Merger Agreement to be signed by their respective officers thereunto duly authorized, all as of the date first set forth above.

**WILSHIRE BANK**

By: _____

Name:  Jae Whan Yoo

Title:  President & Chief Executive Officer

By: _____

Name:  Lisa K. Pai

Title:  Secretary

**BBCN BANK**

By: _____

Name:  Kevin S. Kim

Title:  President & Chief Executive Officer

By: _____

Name:  David W. Kim

Title:  Secretary

la-1304419

<u>BANK OF HOPE v. KYUNG EUN HWANG a/k/a KYUNG E. HWANG,</u>
<u>*ET AL*</u>

**EXHIBIT B**

# MORTGAGE

This mortgage made and entered into this <u>3rd</u> day of <u>September</u> <u>2004</u>,

by and between <u>Kyung Eun Hwang and James Hwang Jr., as joint tenants</u>

(hereinafter referred to as mortgagor) and <u>Foster Bank</u>

<u>(hereinafter referred to as</u>

mortgagee), who maintains an office and place of business at <u>5225 N. Kedzie Ave. Chicago, IL 60625</u>

WITNESSETH, that for the consideration hereinafter stated, receipt of which is hereby acknowledged, the mortgagor does hereby mortgage, sell, grant, assign, and convey unto the mortgagee, his successors and assigns, all of the following described property situated and being in the County of <u>Cook</u> State of <u>Illinois</u>

UNIT NUMBER 2605, IN THE 5445 EDGEWATER PLAZA CONDOMINIUM, AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL ESTATE:

PART OF THE SOUTH 242 FEET OF THE NORTH 875 FEET OF THE EAST FRACTIONAL 1/2 OF THE NORTH EAST 1/4 OF SECTION 8, TOWNSHIP 40 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS; WHICH SURVEY IS ATTACHED AS EXHIBIT "A" TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT 24870735, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, IN COOK COUNTY, ILLINOIS.

PROPERTY ADDRESS: 5455 NORTH SHERIDAN UNIT 2605, CHICAGO, IL 60640

PERMANENT INDEX NUMBER:

Doc#: 0427844038
Eugene "Gene" Moore Fee: $58.00
Cook County Recorder of Deeds
Date: 10/04/2004 10:11 AM Pg: 1 of 5

Together with and including all buildings, all fixtures including but not limited to all plumbing, heating, lighting, ventilating, refrigerating, incinerating, air conditioning apparatus, and elevators (the mortgagor hereby declaring that it is intended that the items herein enumerated shall be deemed to have been permanently installed as part of the realty), and all improvements now or hereafter existing thereon; the hereditaments and appurtenances and all other rights thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, all rights of redemption, and the rents, issues, and profits of the above described property (provided, however, that the mortgagor shall be entitled to the possession of said property and to collect and retain the rents, issues, and profits until default hereunder). To have and to hold the same unto the mortgagee and the successors in interest of the mortgagee forever in fee simple or such other estate, if any, as is stated herein.

The mortgagor covenants that he is lawfully seized and possessed of and has the right to sell and convey said property; that the same is free from all encumbrances except as hereinabove recited; and that he hereby binds himself and his successors in interest to warrant and defend the title aforesaid thereto and every part thereof against the claims of all persons whomsoever.

This instrument is given to secure the payment of a promissory note dated <u>September 3, 2004</u> in the

principal sum of $ <u>150,000</u> signed by <u>Keith S. Yamanaka</u> <u>James Hwang Jr.</u>

in behalf of <u>Luxury Automotive Wholesalers, Inc.</u>

B of 333

Bankers Systems, Inc., St. Cloud, MN

Said promissory note was given to secure a loan in which the Small Business Administration, an agency of the United States of America, has participated. In compliance with section 101.1(d) of the Rules and Regulations of the Small Business Administration [13 C.F.R. 101.1(d)], this instrument is to be construed and enforced in accordance with applicable Federal law.

1. The mortgagor covenants and agrees as follows:

a. He will promptly pay the indebtedness evidenced by said promissory note at the times and in the manner therein provided.

b. He will pay all taxes, assessments, water rates, and other governmental or municipal charges, fines, or impositions, for which provision has not been made hereinbefore, and will promptly deliver the official receipts therefor to the said mortgagee.

c. He will pay such expenses and fees as may be incurred in the protection and maintenance of said property, including the fees of any attorney employed by the mortgagee for the collection of any or all of the indebtedness hereby secured, or foreclosure by mortgagee's sale, or court proceedings, or in any other litigation or proceeding affecting said property. Attorneys' fees reasonably incurred in any other way shall be paid by the mortgagor.

d. For better security of the indebtedness hereby secured, upon the request of the mortgagee, its successors or assigns, he shall execute and deliver a supplemental mortgage or mortgages covering any additions, improvements, or betterments made to the property hereinabove described and all property acquired by it after the date hereof(all in form satisfactory to mortgagee). Furthermore, should mortgagor fail to cure any default in the payment of a prior or inferior encumbrance on the property described by this instrument, mortgagor hereby agrees to permit mortgagee to cure such default, but mortgagee is not obligated to do so; and such advances shall become part of the indebtedness secured by this instrument, subject to the same terms and conditions.

e. The rights created by this conveyance shall remain in full force and effect during any postponement or extension of the time of the payment of the indebtedness evidenced by said promissory note or any part thereof secured hereby.

f. He will continuously maintain hazard insurance, of such type or types and in such amounts as the mortgagee may from time to time require on the improvements now or hereafter on said property, and will pay promptly when due any premiums thereof. All insurance shall be carried in companies acceptable to mortgagee and the policies and renewals thereof shall be held by mortgagee and have attached thereto loss payable clauses in favor of and in form acceptable to the mortgagee. In event of loss, mortgagor will give immediate notice in writing to mortgagee, and mortgagee may make proof of loss if not made promptly by mortgagor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to mortgagee instead of to mortgagor and mortgagee jointly, and the insurance proceeds, or any part thereof, may be applied by mortgagee at its option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged or destroyed. In event of foreclosure of this mortgage, or other transfer of title to said property in extinguishment of the indebtedness secured hereby, all right, title, and interest of the mortgagor in and to any insurance policies then in force shall pass to the purchaser or mortgagee or, at the option of the mortgagee, may be surrendered for a refund.

g. He will keep all buildings and other improvements on said property in good repair and condition; will permit, commit, or suffer no waste, impairment, deterioration of said property or any part thereof; in the event of failure of the mortgagor to keep the buildings on said premises and those erected on said premises, or improvements thereon, in good repair, the mortgagee may make such repairs as in its discretion it may deem necessary for the proper preservation thereof; and the full amount of each and every such payment shall be immediately due and payable; and shall be secured by the lien of this mortgage.

h. He will not voluntarily create or permit to be created against the property subject to this mortgage any lien or liens inferior or superior to the lien of this mortgage without the written consent of the mortgagee; and further, that he will keep and maintain the same free from the claim of all persons supplying labor or materials for construction of any and all buildings or improvements now being erected or to be erected on said premises.

i. He will not rent or assign any part of the rent of said mortgaged property or demolish, or remove, or substantially alter any building without the written consent of the mortgagee.

j. All awards of damages in connection with any condemnation for public use of or injury to any of the property subject to this mortgage are hereby assigned and shall be paid to mortgagee, who may apply the same to payment of the installments last due under said note, and mortgagee is hereby authorized, in the name of the mortgagor, to execute and deliver valid acquittances thereof and to appeal from any such award.

k. The mortgagee shall have the right to inspect the mortgaged premises at any reasonable time.

2. Default in any of the covenants or conditions of this instrument or of the note or loan agreement secured hereby shall terminate the mortgagor's right to possession, use, and enjoyment of the property, at the option of the mortgagee or his assigns (it being agreed that the mortgagor shall have such right until default). Upon any such default, the mortgagee shall become the owner of all of the rents and profits accruing after default as security for the indebtedness secured hereby, with the right to enter upon said property for the purpose of collecting such rents and profits. This instrument shall operate as an assignment of any rentals on said property to that extent.

SBA FORM 928 (11-85)                                                                 Bankers Systems, Inc., St. Cloud, MN

3. The mortgagor covenants and agrees that if he shall fail to pay said indebtedness or any part thereof when due, or shall fail to perform any covenant or agreement of this instrument or the promissory note secured hereby, the entire indebtedness hereby secured shall immediately become due, payable, and collectible without notice, at the option of the mortgagee or assigns, regardless of maturity, and the mortgagee or his assigns may before or after entry sell said property without appraisement (the mortgagor having waived and assigned to the mortgagee all rights of appraisement):

(I) at judicial sale pursuant to the provisions of 28 U.S.C. 2001 (a); or

(II) at the option of the mortgagee, either by auction or by solicitation of sealed bids, for the highest and best bid complying with the terms of sale and manner of payment specified in the published notice of sale, first giving four weeks' notice of the time, terms, and place of such sale, by advertisement not less than once during each of said four weeks in a newspaper published or distributed in the county in which said property is situated, all other notice being hereby waived by the mortgagor (and said mortgagee, or any person on behalf of said mortgagee, may bid with the unpaid indebtedness evidenced by said note). Said sale shall be held at or on the property to be sold or at the Federal, county, or city courthouse for the county in which the property is located. The mortgagee is hereby authorized to execute for and on behalf of the mortgagor and to deliver to the purchaser at such sale a sufficient conveyance of said property, which conveyance shall contain recitals as to the happening of the default upon which the execution of the power of sale herein granted depends; and the said mortgagor hereby constitutes and appoints the mortgagee or any agent or attorney of the mortgagee, the agent and attorney in fact of said mortgagor to make such recitals and to execute said conveyance and hereby covenants and agrees that the recitals so made shall be effectual to bar all equity or right of redemption, homestead, dower, and all other exemptions of the mortgagor, all of which are hereby expressly waived and conveyed to the mortgagee; or

(III) take any other appropriate action pursuant to state or Federal statute either in state or Federal court or otherwise for the disposition of the property.

In the event of a sale as hereinbefore provided, the mortgagor or any persons in possession under the mortgagor shall then become and be tenants holding over and shall forthwith deliver possession to the purchaser at such sale or be summarily dispossessed, in accordance with the provisions of law applicable to tenants holding over. The power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are granted as cumulative to the remedies for collection of said indebtedness provided by law.

4. The proceeds of any sale of said property in accordance with the preceding paragraphs shall be applied first to pay the costs and expenses of said sale, the expenses incurred by the mortgagee for the purpose of protecting or maintaining said property, and reasonable attorneys' fees; secondly, to pay the indebtedness secured hereby; and thirdly, to pay any surplus or excess to the person or persons legally entitled thereto.

5. In the event said property is sold at a judicial foreclosure sale or pursuant to the power of sale hereinabove granted, and the proceeds are not sufficient to pay the total indebtedness secured by this instrument and evidenced by said promissory note, the mortgagee will be entitled to a deficiency judgment for the amount of the deficiency without regard to appraisement.

6. In the event the mortgagor fails to pay any Federal, state, or local tax assessment, income tax or other tax lien, charge, fee, or other expense charged against the property the mortgagee is hereby authorized at his option to pay the same. Any sums so paid by the mortgagee shall be added to and become a part of the principal amount of the indebtedness evidenced by said note, subject to the same terms and conditions. If the mortgagor shall pay and discharge the indebtedness evidenced by said promissory note, and shall pay such sums and shall discharge all taxes and liens and the costs, fees, and expenses of making, enforcing, and executing this mortgage, then this mortgage shall be canceled and surrendered.

7. The covenants herein contained shall bind and the benefits and advantages shall inure to the respective successors and assigns of the parties hereto. Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all genders.

8. No waiver of any covenant herein or of the obligation secured hereby shall at any time thereafter be held to be a waiver of the terms hereof or of the note secured hereby.

9. A judicial decree, order, or judgment holding any provision or portion of this instrument invalid or unenforceable shall not in any way impair or preclude the enforcement of the remaining provisions or portions of this instrument.

10. Any written notice to be issued to the mortgagor pursuant to the provisions of this instrument shall be addressed to the mortgagor at 5455 North Sheridan Unit 2605, Chicago, IL 60640 _____ and any written notice to be issued to the mortgagee shall

be addressed to the mortgagee at 5225 N. Kedzie Ave. Chicago, IL 60625 _____

Bankers Systems, Inc., St. Cloud, MN

IN WITNESS WHEREOF, the mortgagor has executed this instrument and the mortgagee has accepted delivery of this instrument as of the day and year aforesaid.

Kyung Eun Hwang

James Hwang Jr.

Executed and delivered in the presence of the following witnesses:

Foster Bank (Attn: Heidi Yoon)

5225 North Kedzie Avenue, Chicago, IL 60625

The loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of The Note secured by this instrument.

(Add Appropriate Acknowledgment)

Bankers Systems, Inc., St. Cloud, MN

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ILLINOIS)
                 )   SS.
COUNTY OF Cook )

    I, _____the undersigned_____, a Notary Public in and for said County, in the State of aforesaid, do hereby certify that on this day personally appeared before me, _____Kyung Eun Hwang_____ and _____James Hwang Jr._____, personally known to me to be the same persons whose names are subscribed to the foregoing instrument, and acknowledged that they signed, sealed, and delivered the said instrument as their free and voluntary act and deed, for the uses and purposes therein set forth, including the waive of rights of redemption and waive of all rights and benefits under and by virtue of the homestead exemption laws of this state.

    Given under my hand and notarial seal this _3rd_ day of _Sept_, 20_04_

(NOTARIAL SEAL)

```
OFFICIAL SEAL
HEIDI YOON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-8-2007
```

_____
Notary Public

My commission expires:_____

This instrument prepared by:

Foster Bank
Heidi Yoon
5225 North Kedzie Avenue
Chicago, IL  60625

THIS DOCUMENT PREPARED BY:

Grace Lee
Foster Bank
5225 N. Kedzie Avenue
Chicago, IL 60625

**AFTER RECORDING MAIL TO:**

**FOSTER BANK (Loan #2074300)**
**LOAN DEPARTMENT**
**5225 N. KEDZIE AVENUE**
**CHICAGO, ILLINOIS 60625**



Doc#: 0620818037 Fee: $32.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 07/27/2006 12:11 PM Pg: 1 of 5

## MORTGAGE AMENDMENT AGREEMENT

This Indenture, made this 17th day of July, 2006, by and between **FOSTER BANK**, an Illinois Banking Corporation, 5225 North Kedzie Avenue, Chicago, Illinois 60625, the owner of the mortgage hereinafter described, and **Kyung Eun Hwang and James Hwang Jr.**, representing themselves to be the owner or owners of the real estate hereinafter and in said deed described ("Owner"),

## W I T N E S S E T H :

1. The parties hereby agree to modify the amount of the Note and extend the time of payment of the indebtedness evidenced by the principal promissory note or notes of **Luxury Automotive Wholesales, Inc.**, secured by a mortgage recorded September 4, 2004, in the office of the Recorder of Cook County, Illinois, as document number 0427844038 conveying to FOSTER BANK, an Illinois banking corporation certain real estate in Cook County, Illinois described as follows:

UNIT NUMBER 2605, IN THE 5455 EDGEWATER PLAZA CONDOMINIUM, AS DELINEATED ON A SURVEY OF THE FOLLWONG DESCRIBED REAL ESTATE:

PART OF THE SOUTH 242 FEET OF THE NORTH 875 FEET OF THE EAST FRACTIONAL ½ OF THE NORTH EAST ¼ OF SECTION 8, TOWNSHIP 40 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS: WHICH SURVEY IS ATTACHED AS EXHIBIT "A" TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT 24870735, TOGETHER WHITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, IN COOK COUNTY, ILLINOIS.

COMMONLY KNOWN AS: 5455 North Sheridan #2605, Chicago, IL 60640

Box 334

PERMANENT INDEX NO.: 14-08-203-016-1287

2. The amount remaining unpaid on the indebtedness is **ONE HUNDRED FIFTY THOUSAND AND 00/100 UNITED STATES DOLLARS ($150,000.00)**

3. Said indebtedness of **$325,000.00** shall be paid on or before **July 17, 2007** as provided in the Promissory note or notes, copies of which is attached hereto as **Exhibit A.**

4. If any part of said indebtedness or interest thereon be not paid at the maturity thereof as provided in the promissory note or notes, or if default in the performance of any other covenant of the Owner shall continue after written notice thereof, the entire principal sum secured by said mortgage, together with the then accrued interest thereon, shall, without notice, at the option of the holder or holders of said principal note or notes, become due and payable, in the same manner as if said extension had not been granted.

5. This Amendment Agreement is supplementary to said mortgage. All the provisions thereof and of the principal note or notes, including the right to declare principal and accrued interest due for any cause specified in said mortgage or notes, but not including any prepayment privileges unless herein expressly provided for, shall remain in full force and effect except as herein expressly modified. The Owner agrees to perform all the covenants of the grantor or grantors in said mortgage. The provisions of this indenture shall inure to the benefit of any holder of said principal note or notes and interest notes and shall bind the heirs, personal representatives and assigns of the Owner. The Owner hereby waives and releases all rights and benefits under and by virtue of the Homestead Exemption Laws of the State of Illinois with respect to said real estate. If the Owner consists of two or more persons, their liability hereunder shall be joint and several.

IN TESTIMONY WHEREOF, the parties hereto have signed, sealed and delivered this indenture the day and year first above written.

2

KYUNG EUN HWANG AND JAMES HWANG, JR.

X _____
KYUNG EUN HWANG

_____
JAMES HWANG, JR.

Address for notices:

5455 North Sheridan #2605
Chicago, IL 60640

3

EXHIBIT "A"

Loan 

## AMENDMENT/EXTENSION
## TO
## <u>REVOLVING CREDIT NOTE</u>

(1) Date of Note:         September 3, 2004
     Amount of Note:   $150,000
     Interest Rate:     Prime + 2.25%
     Amortized Period:  12 Months
     Maturity Date:    September 3, 2005

(2) Date of Note:         December 29, 2005
     Amount of Note:   $150,000
     Interest Rate:     Prime + 2.25%
     Amortized Period:  12 Months
     Maturity Date:    January 1, 2007

Borrower/Mortgagor:     Luxury Automotive Wholesalers, Inc.

Lender/Mortgagee:     Foster Bank, an Illinois Banking Corporation

    In consideration of Ten Dollars and other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties, the Borrower and Lender do hereby agree to amend the above identified Note as follows:

New Maturity Date:  July 17, 2007

New Loan Amount:  THREE HUNDRED TWENTY FIVE THOUSAND AND NO CENTS ($325,000.00)

New Collateral:  James R. Hwang as personal guarantor

All other terms and conditions of the Note shall remain the same.

Dated this 17th day of July 2006.

Lender/Mortgagee:

FOSTER BANK, an Illinois banking corporation

BY: _____

TITLE: Loan Officer

Borrower:

Luxury Automotive Wholesalers, Inc.

_____
James Hwang Jr, President

_____
James Hwang Jr, Secretary

WITNESS BY

THIS DOCUMENT PREPARED BY:

Foster Bank
5225 N. Kedzie Avenue
Chicago, IL 60625

AFTER RECORDING MAIL TO:

FOSTER BANK
LOAN DEPARTMENT/AMY CHANG
5225 N. KEDZIE AVENUE
CHICAGO, ILLINOIS 60625



Doc#: 0812918021 Fee: $44.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 05/08/2008 10:34 AM Pg: 1 of 5

## EXTENSION AND MODIFICATION AGREEMENT

This Indenture, made this 17th day of July, 2007, by and between **FOSTER BANK**, an Illinois Banking Corporation, 5225 North Kedzie Avenue, Chicago, Illinois 60625, the owner of the mortgage hereinafter described, and **Kyung Eun Hwang and James Hwang Jr.**, **As Joint Tenants** representing himself or themselves to be the owner or owners of the real estate hereinafter and in said deed described ("Owner"),

## W I T N E S S E T H :

1.  The parties hereby agree to modify the amount of the Note and extend the time of payment of the indebtedness evidenced by the principal promissory note or notes of **Luxury Automotive Wholesales, Inc.** secured by a mortgage dated September 3, 2004 and recorded October 4, 2004, in the office of the Recorder of Cook County, Illinois, as document number 0427844038., secured by a mortgage dated July 17, 2006 and recorded July 27, 2006, in the office of the Recorder of Cook County, Illinois, as document number 0620818037.,conveying to FOSTER BANK, an Illinois banking corporation certain real estate in Lake County, Illinois described as follows:

**UNIT NUMBER 2605, IN THE 5455 EDGEWATER PLAZA CONDOMINIUM, AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL ESTATE:**

**PART OF THE SOUTH 242 FEET OF THE NORTH 875 FEET OF THE EAST FRACTIONAL 1/2 OF THE NORTH EAST 1/4 OF SECTION 8, TOWNSHIP 40 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS; WHICH SURVEY IS ATTACHED AS EXHIBIT 'A' TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT 24870735, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, IN COOK COUNTY, ILLINOIS.**

1

Commonly known as: **5455 NORTH SHERIDAN #2605**
**CHICAGO, IL 60640**

Permanent Index Number(s): **14-08-203-016-1287**

2. The amount remaining unpaid on the indebtedness **is**
**$324,302.08.**
3. Said indebtedness of **$325,000.00** shall be paid on or
before **July 17, 2008** as provided in the Revolving Credit Note, or
notes, copies of which is attached hereto as **Exhibit A.**

4. If any part of said indebtedness or interest thereon be
not paid at the maturity thereof as provided in the promissory
note or notes, or if default in the performance of any other
covenant of the owner shall continue after written notice
thereof, the entire principal sum secured by said mortgage,
together with the then accrued interest thereon, shall, without
notice, at the option of the holder or holders of said principal
note or notes, become due and payable, in the same manner as if
said extension had not been granted.

5. This Extension Agreement is supplementary to said
mortgage. All the provisions thereof and of the principal note
or notes, including the right to declare principal and accrued
interest due for any cause specified in said mortgage or notes,
but not including any prepayment privileges unless herein
expressly provided for, shall remain in full force and effect
except as herein expressly modified. The Owner agrees to perform
all the covenants of the grantor or grantors in said mortgage.
The provisions of this indenture shall inure to the benefit of
any holder of said principal note or notes and interest notes and
shall bind the heirs, personal representatives and assigns of the
Owner. The Owner hereby waives and releases all rights and
benefits under and by virtue of the Homestead Exemption Laws of
the State of Illinois with respect to said real estate. If the
Owner consists of two or more persons, their liability hereunder
shall be joint and several.

IN TESTIMONY WHEREOF, the parties hereto have signed, sealed
and delivered this indenture the day and year first above
written.

Kyung Eun Hwang and James Hwang Jr.

_____
Kyung Eun Hwang

_____
James Hwang Jr.

Address: 5455 North Sheridan #2605
Chicago, IL 60640

STATE OF ILLINOIS     )

COUNTY OF Lake        )


I, the undersigned, a Notary Public in and
for said County, in the State aforesaid, DO HEREBY CERTIFY that
Kyung Eun Hwang and James Hwang Jr., who are personally known to
me to be the same person(s) whose name(s) are subscribed to the
foregoing instrument, appeared before me this day in person and
acknowledged that they signed, sealed and delivered the said
instrument as their free and voluntary act for the uses and
purposes therein set forth.

GIVEN under my hand and Notarial, seal this /8th day of
_____July_____, 2007.


SEAL                    _____
                                 Notary Public

My Commission Expires: 11/2/2011

OFFICIAL SEAL
MI HAE PARK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/02/11

3

EXHIBIT A

Loan ████████

# AMENDMENT/EXTENSION
## TO
## REVOLVING CREDIT NOTE

(1)     Date of Note:       September 3, 2004
             Amount of Note:   $150,000
             Interest Rate:     Prime + 2.25%
             Amortized Period:  12 Months
             Maturity Date:    September 3, 2005

(2)     Date of Note:       December 29, 2005
             Amount of Note:   $150,000
             Interest Rate:     Prime + 2.25%
             Amortized Period:  12 Months
             Maturity Date:    January 1, 2007

(3)     Date of Note:       July 17, 2006
             Amount of Note:   $325,000
             Interest Rate:     Prime + 2.25%
             Amortized Period:  12 Months
             Maturity Date:    July 17, 2007

Borrower/Mortgagor:     Luxury Automotive Wholesalers, Inc.

Lender/Mortgagee:     Foster Bank, an Illinois Banking Corporation

     In consideration of Ten Dollars and other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties, the Borrower and Lender do hereby agree to amend the above identified Note as follows:

New Maturity Date:   July 17, 2008

Eliminate Collateral:   1) Keith S. Yamanaka as a personal guarantor
                   2) First mortgage against a residential property located at 2474 Spring Valley Court, Aurora, IL

All other terms and conditions of the Note shall remain the same.

Dated this _____ day of July 2007.

Lender/Mortgagee:

FOSTER BANK, an Illinois banking corporation

BY: _____

TITLE: Loan Officer

Borrower:

Luxury Automotive Wholesalers, Inc.

_____
James Hwang Jr. President & Secretary

THIS DOCUMENT PREPARED BY:

LOAN#2074300-1

Foster Bank
5225 N. Kedzie Avenue
Chicago, IL 60625

AFTER RECORDING MAIL TO:

FOSTER BANK
LOAN DEPARTMENT/AMY CHANG
5225 N. KEDZIE AVENUE
CHICAGO, ILLINOIS 60625



Doc#:  0827710083 Fee: $44.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 10/03/2008 01:59 PM Pg: 1 of 5

## EXTENSION AND MODIFICATION AGREEMENT

This Indenture, made this 17th day of July, 2008, by and between **FOSTER BANK**, an Illinois Banking Corporation, 5225 North Kedzie Avenue, Chicago, Illinois 60625, the owner of the mortgage hereinafter described, and **Kyung Eun Hwang and James Hwang Jr., As Joint Tenants** representing himself or themselves to be the owner or owners of the real estate hereinafter and in said deed described ("Owner"),

### W I T N E S S E T H :

1.  The parties hereby agree to modify the amount of the Note and extend the time of payment of the indebtedness evidenced by the principal promissory note or notes of **Luxury Automotive Wholesales, Inc.** secured by a mortgage dated September 3, 2004 and recorded October 4, 2004, in the office of the Recorder of Cook County, Illinois, as document number 0427844038; Mortgage modification agreement dated July 17, 2006 and recorded July 27, 2006, in the office of the Recorder of Cook County, Illinois, as document number 0620818037; Mortgage modification agreement dated July 17, 2007, and recorded May 8, 2008 as document number 0812918021 conveying to FOSTER BANK, an Illinois banking corporation certain real estate in Cook County, Illinois described as follows:

**UNIT NUMBER 2605, IN THE 5455 EDGEWATER PLAZA CONDOMINIUM, AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL ESTATE:**

**PART OF THE SOUTH 242 FEET OF THE NORTH 875 FEET OF THE EAST FRACTIONAL 1/2 OF THE NORTH EAST 1/4 OF SECTION 8, TOWNSHIP 40 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS; WHICH SURVEY IS ATTACHED AS EXHIBIT 'A' TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT 24870735, TOGETHER**

1

**WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, IN COOK COUNTY, ILLINOIS.**

Commonly known as: **5455 NORTH SHERIDAN #2605
CHICAGO, IL 60640**

Permanent Index Number(s): **14-08-203-016-1287**

2.  The amount remaining unpaid on the indebtedness **is $324,302.08.**

3.  Said indebtedness of **$325,000.00** shall be paid on or before **July 17, 2009** as provided in the Revolving Credit Note, or notes, copies of which is attached hereto as **Exhibit A.**

4.  If any part of said indebtedness or interest thereon be not paid at the maturity thereof as provided in the promissory note or notes, or if default in the performance of any other covenant of the owner shall continue after written notice thereof, the entire principal sum secured by said mortgage, together with the then accrued interest thereon, shall, without notice, at the option of the holder or holders of said principal note or notes, become due and payable, in the same manner as if said extension had not been granted.

5.  This Extension Agreement is supplementary to said mortgage. All the provisions thereof and of the principal note or notes, including the right to declare principal and accrued interest due for any cause specified in said mortgage or notes, but not including any prepayment privileges unless herein expressly provided for, shall remain in full force and effect except as herein expressly modified. The Owner agrees to perform all the covenants of the grantor or grantors in said mortgage. The provisions of this indenture shall inure to the benefit of any holder of said principal note or notes and interest notes and shall bind the heirs, personal representatives and assigns of the Owner. The Owner hereby waives and releases all rights and benefits under and by virtue of the Homestead Exemption Laws of the State of Illinois with respect to said real estate. If the Owner consists of two or more persons, their liability hereunder shall be joint and several.

IN TESTIMONY WHEREOF, the parties hereto have signed, sealed and delivered this indenture the day and year first above written.

Kyung Eun Hwang and James Hwang Jr.

_Kyung E Hwang By James Hwang Jr HER ATTORNEY IN FACT_
Kyung Eun Hwang

_PRESIDENT_
James Hwang Jr.

Address: 5455 North Sheridan #2605
Chicago, IL 60640

STATE OF ILLINOIS    )

COUNTY OF Lake       )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Kyung Eun Hwang and James Hwang Jr., who are personally known to me to be the same person(s) whose name(s) are subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act for the uses and purposes therein set forth.

GIVEN under my hand and Notarial, seal this _____ day of ___July_____, 2008.

SEAL

OFFICIAL SEAL
SAMENTHA KIM
Notary Public - State of Illinois
My Commission Expires Sep 18, 2010

_____
Notary Public

My Commission Expires:

3

EXHIBIT A

Loan ████████

# AMENDMENT/EXTENSION
## TO
## REVOLVING CREDIT NOTE

(1)     Date of Note:        September 3, 2004
          Amount of Note:    $150,000
          Interest Rate:      Prime + 2.25%
          Amortized Period:  12 Months
          Maturity Date:     September 3, 2005

(2)     Date of Note:        December 29, 2005
          Amount of Note:    $150,000
          Interest Rate:      Prime + 2.25%
          Amortized Period:  12 Months
          Maturity Date:     January 1, 2007

(3)     Date of Note:        July 17, 2006
          Amount of Note:    $325,000
          Interest Rate:      Prime + 2.25%
          Amortized Period:  12 Months
          Maturity Date:     July 17, 2007

(4)     Date of Note:        July 17, 2007
          Amount of Note:    $325,000
          Interest Rate:      Prime + 2.25%
          Amortized Period:  12 Months
          Maturity Date:     July 17, 2008

Borrower/Mortgagor:     Luxury Automotive Wholesalers, Inc.

Lender/Mortgagee:     Foster Bank, an Illinois Banking Corporation

In consideration of Ten Dollars and other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties, the Borrower and Lender do hereby agree to amend the above identified Note as follows:

New Maturity Date:   July 17, 2009

All other terms and conditions of the Note shall remain the same.

Dated this _____ day of July 2008.

Lender/Mortgagee:

FOSTER BANK, an Illinois banking corporation

WITNESS BY

BY: _____

TITLE: Loan Officer

Borrower:

Luxury Automotive Wholesalers, Inc.

James Hwang Jr., President & Secretary





Doc#: 1004044033 Fee: $46.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 02/09/2010 12:29 PM Pg: 1 of 6

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption

**Report Mortgage Fraud**
**800-532-8785**

---

The property identified as:　　**PIN:** 14-08-203-016-1287

**Address:**
**Street:**　　5455 NORTH SHERIDAN ROAD

**Street line 2:** UNIT 2605

**City:** CHICAGO　　　　　**State:** IL　　　　　**ZIP Code:** 60640

**Lender:** FOSTER BANK

**Borrower:** KYUNG EUN HWANG AND JAMES HWANG JR., AS JOINT TENANTS

**Loan / Mortgage Amount:** $325,000.00

This property is located within Cook County and the transaction is exempt from the requirements of 765 ILCS 77/70 et seq. because the application was taken by an exempt entity.

**Certificate number:** DED47488-CB3E-41BD-8206-7D0F21CA9F60　　　**Execution date:** 08/28/2009

THIS DOCUMENT PREPARED BY:

Foster Bank
5225 N. Kedzie Avenue
Chicago, IL 60625

AFTER RECORDING MAIL TO:

FOSTER BANK / JASON RHEE
LOAN DEPARTMENT
5225 N. KEDZIE AVENUE
CHICAGO, ILLINOIS 60625                    Loan# ▬▬▬▬▬

---

## MORTGAGE EXTENSION AGREEMENT

    This Indenture, made this 28th day of August, 2009, by and between **FOSTER BANK**, an Illinois Banking Corporation, 5225 North Kedzie Avenue, Chicago, Illinois 60625, the owner of the mortgage hereinafter described, and **KYUNG EUN HWANG AND JAMES HWANG JR.**, **AS JOINT TENANTS** representing herself or themselves to be the owner or owners of the real estate hereinafter and in said deed described ("Owner"),

### W I T N E S S E T H :

    1.  The parties hereby agree to modify the amount of the Note and extend the time of payment of the indebtedness evidenced by the principal promissory note or notes of **CHICAGO CAR COLLECTION, INC.** secured by a mortgage dated September 3, 2004 and recorded October 4, 2004, in the office of the Recorder of Cook County, Illinois, as document number **0427844038**; Extension/Modification dated July 17, 2006 and recorded on July 17, 2006 in the office of the Recorder of Cook County, Illinois, as document number **0620818037**; Extension/Modification dated July 17, 2007 and recorded on May 8, 2008 in the officer of the Recorder of Cook County, Illinois, as document number **0812918021** conveying to FOSTER BANK, an Illinois banking corporation certain real estate in Cook County, Illinois described as follows:

**UNIT NUMBER 2605, IN THE 5455 EDGEWATER PLAZA CONDOMINIUM, AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL ESTATE:**

**PART OF THE SOUTH 242 FEET OF THE NORTH 875 FEET OF THE EAST FRACTIONAL ½ OF THE NORTH EAST ¼ OF SECTION 8, TOWNSHIP 40 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS; WHICH SURVEY IS ATTACHED AS EXHIBIT "A" TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT 24870735, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS IN COOK COUNTY, ILLINOIS.**

1

**COMMONLY KNOWN AS: 5455 North Sheridan, Unit #2605, Chicago, IL**

**PERMANENT INDEX NO.: 14-08-203-016-1287**

2.   The amount remaining unpaid on the indebtedness is **THREE HUNDRED TWENTY FOUR THOUSAND THREE HUNDRED TWO AND 00/100 UNITED STATES DOLLARS ($324,302.00)**

3.   Said indebtedness of **$324,302.00** shall be paid on or before **July 17, 2016** as provided in the Promissory note or notes, copies of which is attached hereto as **Exhibit A.**

4.   If any part of said indebtedness or interest thereon be not paid at the maturity thereof as provided in the promissory note or notes, or if default in the performance of any other covenant of the Owner shall continue after written notice thereof, the entire principal sum secured by said mortgage, together with the then accrued interest thereon, shall, without notice, at the option of the holder or holders of said principal note or notes, become due and payable, in the same manner as if said extension had not been granted.

5. This Extension Agreement is supplementary to said mortgage All the provisions thereof and of the principal note or notes, including the right to declare principal and accrued interest due for any cause specified in said mortgage or notes, but not including any prepayment privileges unless herein expressly provided for, shall remain in full force and effect except as herein expressly modified.  The Owner agrees to perform all the covenants of the grantor or grantors in said mortgage.  The provisions of this indenture shall inure to the benefit of any holder of said principal note or notes and interest notes and shall bind the heirs, personal representatives and assigns of the Owner.  The Owner hereby waives and releases all rights and benefits under and by virtue of the Homestead Exemption Laws of the State of Illinois with respect to said real estate.  If the owner consists of two or more persons, their liability hereunder shall be joint and
several.

2

IN TESTIMONY WHEREOF, the parties hereto have signed, sealed and delivered this indenture the day and year first above written.

Kyung Eun Hwang and James Hwang Jr.

_____
Kyung Eun Hwang

_____
James Hwang Jr.

Address: 5455 North Sheridan #2605
Chicago, IL 60640

STATE OF ILLINOIS    )

COUNTY OF Lake       )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Kyung Eun Hwang and James Hwang Jr., who are personally known to me to be the same person(s) whose name(s) are subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act for the uses and purposes therein set forth.

GIVEN under my hand and Notarial, seal this __8th__ day of ___September___, 2009.

SEAL

> OFFICIAL SEAL
> SAMENTHA KIM
> Notary Public - State of Illinois
> My Commission Expires Sep 18, 2010

_____
Notary Public

My Commission Expires: 9-18-2010

3

**Loan#** ▓▓▓▓▓▓▓▓                    GI

EXHIBIT A
## AMENDMENT/EXTENSION
## TO
## ADJUSTABLE RATE INSTALLMENT NOTE

(1)    Date of Note:          September 3, 2004
       Amount of Note:        $150,000
       Interest Rate:         Prime + 2.25%
       Amortized Period:      12 Months
       Maturity Date:         September 3, 2005

(2)    Date of Note:          December 29, 2005
       Amount of Note:        $150,000
       Interest Rate:         Prime + 2.25%
       Amortized Period:      12 Months
       Maturity Date:         January 1, 2007

(3)    Date of Note:          July 17, 2006
       Amount of Note:        $325,000
       Interest Rate:         Prime + 2.25%
       Amortized Period:      12 Months
       Maturity Date:         July 17, 2007

(4)    Date of Note:          July 17, 2007
       Amount of Note:        $325,000
       Interest Rate:         Prime + 2.25%
       Amortized Period:      12 Months
       Maturity Date:         July 17, 2008

(5)    Date of Note:          July 17, 2008
       Amount of Note:        $325,000
       Interest Rate:         Prime + 2.25%
       Amortized Period:      12 Months
       Maturity Date:         July 17, 2009

(6)    Date of Note:          July 17, 2009
       Amount of Note:        $324,302
       Interest Rate:         Prime + 2.25%
       Amortized Period:      84 Months
       Maturity Date:         July 17, 2016

Borrower/Mortgagor:          Chicago Car Collection, Inc.

Lender/Mortgagee:            Foster Bank, an Illinois Banking Corporation

In consideration of Ten Dollars and other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties, the Borrower and Lender do hereby agree to amend the above identified Note as follows:

New Maturity Date: **July 17, 2024**
Amortized Period: **180 Months**
New Monthly Payment: **$2,649.82**

All other terms and conditions of the Note shall remain the same.

Dated this 8th day of September, 2009

Lender/Mortgagee:

FOSTER BANK, an Illinois banking corporation

BY: _____

Tae Gil Lee
TITLE: SBA Loan Officer

Borrower:
Chicago Car Collection, Inc.

BY: _____

James Hwang Jr., PRESIDENT & SECRETARY

<u>BANK OF HOPE V. KYUNG EUN HWANG A/K/A KYUNG E. HWANG,
<u>*ET AL*</u></u>

**EXHIBIT C**





| SBA Loan # |  |
|---|---|
| SBA Loan Name | Luxury Automotive Wholesalers, Inc. |
| Date | September 3, 2004 |
| Loan Amount | 150,000.00 |
| Interest Rate | Prime + 2.25% |
| Borrower | Luxury Automotive Wholesalers, Inc. |
| Operating Company | N/A |
| Lender | Foster Bank |

1. PROMISE TO PAY:

   In return for the Loan, Borrower promises to pay to the order of Lender the amount of

   ***********************One Hundred Fifty Thousand and No/100******************************************_____ Dollars,

   interest on the unpaid principal balance, and all other amounts required by this Note.

2. DEFINITIONS:

   "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

   "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

   "Loan" means the loan evidenced by this Note.

   "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who
   pledges collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.



3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is 6.75% per year. This initial rate is the prime on the date SBA received the loan application, plus 2.25%.

Borrower must pay interest only payments beginning October 3, 2004 and continuing at monthly time intervals thereafter. A final payment of the unpaid principal balance plus accrued interest is due and payable on September 3, 2005.

The "Prime Rate" is the prime rate in effect on the first business day of the month in which a change occurs, as published in the Wall Street Journal on the next business day.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Late charge: If a payment on this Note is more than 15 days late, Lender may charge borrower a late fee up to 5% of the unpaid portion of the regularly scheduled payment.

4. DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A. Fails to do anything required by this Note and other Loan Documents;

B. Defaults on any other loan with Lender;

C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G. Fails to pay any taxes when due;

H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I. Has a receiver or liquidator appointed for any part of their business or property;

J. Makes an assignment for the benefit of creditors;

K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgment;

D. Take possession of any Collateral; or

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

   A. All individuals and entities signing this Note are jointly and severally liable.
   B. Borrower waives all suretyship defenses.
   C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
   D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.
   E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.
   F. If any part of this Note is unenforceable, all other parts remain in effect.
   G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. STATE-SPECIFIC PROVISIONS:

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

Luxury Automotive Wholesalers, Inc.

X _____    9/3/04
Keith S. Yamanaka, President

X _____    9/3/04
James Hwang Jr., Secretary

# AMENDMENT/EXTENSION
## TO
## REVOLVING CREDIT NOTE

(1)  Date of Note:           September 3, 2004
     Amount of Note:         $150,000
     Interest Rate:          Prime + 2.25%
     Amortized Period:       12 Months
     Maturity Date:          September 3, 2005


Borrower/Mortgagor:          Luxury Automotive Wholesalers, Inc.


Lender/Mortgagee:            Foster Bank, an Illinois Banking Corporation


   In consideration of Ten Dollars and other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties, the Borrower and Lender do hereby agree to amend the above identified Note as follows:


   New Maturity Date:        January 1, 2007


   All other terms and conditions of the Note shall remain the same.


Dated this 29th day of December 2005



                                                   Lender/Mortgagee:

FOSTER BANK, an Illinois banking
corporation

BY: _____

TITLE: Loan Officer


Borrower:

Luxury Automotive Wholesalers, Inc.

_____
James Hwang Jr., President

_____
James Hwang Jr., Secretary

WITNESS BY

## AMENDMENT/EXTENSION
## TO
## REVOLVING CREDIT NOTE

(1)    Date of Note:       September 3, 2004
           Amount of Note:   $150,000
           Interest Rate:     Prime + 2.25%
           Amortized Period:  12 Months
           Maturity Date:    September 3, 2005

(2)    Date of Note:       December 29, 2005
           Amount of Note:   $150,000
           Interest Rate:     Prime + 2.25%
           Amortized Period:  12 Months
           Maturity Date:    January 1, 2007

Borrower/Mortgagor:     Luxury Automotive Wholesalers, Inc.

Lender/Mortgagee:       Foster Bank, an Illinois Banking Corporation

    In consideration of Ten Dollars and other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties, the Borrower and Lender do hereby agree to amend the above identified Note as follows:

New Maturity Date:  July 17, 2007

New Loan Amount:   THREE HUNDRED TWENTY FIVE THOUSAND AND NO CENTS ($325,000.00)

New Collateral:      James R. Hwang as personal guarantor

All other terms and conditions of the Note shall remain the same.

Dated this 17th day of July 2006.

Lender/Mortgagee:

FOSTER BANK, an Illinois banking corporation

BY: _____

TITLE: Loan Officer

Borrower:

Luxury Automotive Wholesalers, Inc.

_____
James Hwang Jr., President

_____
James Hwang Jr., Secretary

**WITNESS BY**

_____

Loan ████████

# AMENDMENT/EXTENSION
## TO
## REVOLVING CREDIT NOTE

(1)     Date of Note:      September 3, 2004
        Amount of Note:    $150,000
        Interest Rate:      Prime + 2.25%
        Amortized Period:   12 Months
        Maturity Date:     September 3, 2005

(2)     Date of Note:      December 29, 2005
        Amount of Note:    $150,000
        Interest Rate:      Prime + 2.25%
        Amortized Period:   12 Months
        Maturity Date:     January 1, 2007

(3)     Date of Note:      July 17, 2006
        Amount of Note:    $325,000
        Interest Rate:      Prime + 2.25%
        Amortized Period:   12 Months
        Maturity Date:     July 17, 2007

Borrower/Mortgagor:      Luxury Automotive Wholesalers, Inc.

Lender/Mortgagee:      Foster Bank, an Illinois Banking Corporation

    In consideration of Ten Dollars and other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties, the Borrower and Lender do hereby agree to amend the above identified Note as follows:

    New Maturity Date:   July 17, 2008

    Eliminate Collateral:   1) Keith S. Yamanaka as a personal guarantor
                            2) First mortgage against a residential property located at 2474 Spring Valley Court, Aurora, IL

All other terms and conditions of the Note shall remain the same.

Dated this _____ day of July 2007.


Lender/Mortgagee:

FOSTER BANK, an Illinois banking corporation

BY: _____

TITLE: Loan Officer


Borrower:

Luxury Automotive Wholesalers, Inc.

_____
James Hwang Jr. President & Secretary

# AMENDMENT/EXTENSION
## TO
## REVOLVING CREDIT NOTE

(1)    Date of Note:     September 3, 2004
             Amount of Note:  $150,000
             Interest Rate:    Prime + 2.25%
             Amortized Period: 12 Months
             Maturity Date:   September 3, 2005

(2)    Date of Note:     December 29, 2005
             Amount of Note:  $150,000
              Interest Rate:    Prime + 2.25%
             Amortized Period: 12 Months
             Maturity Date:   January 1, 2007

(3)    Date of Note:     July 17, 2006
             Amount of Note:  $325,000
              Interest Rate:    Prime + 2.25%
             Amortized Period: 12 Months
             Maturity Date:   July 17, 2007

(4)    Date of Note:     July 17, 2007
             Amount of Note:  $325,000
              Interest Rate:    Prime + 2.25%
             Amortized Period: 12 Months
             Maturity Date:   July 17, 2008

Borrower/Mortgagor:    Luxury Automotive Wholesalers, Inc.

Lender/Mortgagee:    Foster Bank, an Illinois Banking Corporation

In consideration of Ten Dollars and other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties, the Borrower and Lender do hereby agree to amend the above identified Note as follows:

New Maturity Date:   July 17, 2009

All other terms and conditions of the Note shall remain the same.

Dated this _____ day of July 2008.

Lender/Mortgagee:

FOSTER BANK, an Illinois banking corporation

WITNESS BY

BY: _____

TITLE: Loan Officer

Borrower:

Luxury Automotive Wholesalers, Inc.

James Hwang Jr., President & Secretary

# AMENDMENT/EXTENSION
## TO
## ADJUSTABLE RATE INSTALLMENT NOTE

(1) Date of Note:      September 3, 2004
     Amount of Note:  $150,000.00
     Interest Rate:   Prime + 2.25%
     Terms:         12 Months
     Maturity Date:   September 3, 2005

(2) Date of Note:      December 29, 2005
     Amount of Note:  $150,000.00
     Interest Rate:   Prime + 2.25%
     Terms:         12 Months
     Maturity Date:   January 1, 2007

(3) Date of Note:      July 17, 2006
     Amount of Note:  $325,000.00
     Interest Rate:   Prime + 2.25%
     Terms:         12 Months
     Maturity Date:   July 17, 2007

(4) Date of Note:      July 17, 2007
     Amount of Note:  $325,000.00
     Interest Rate:   Prime + 2.25%
     Terms:         12 Months
     Maturity Date:   July 17, 2008

(5) Date of Note:      July 17, 2008
     Amount of Note:  $325,000.00
     Interest Rate:   Prime + 2.25%
     Terms:         12 Months
     Maturity Date:   July 17, 2009

Borrower/Mortgagor:   Luxury Automotive Wholesalers, Inc.

Lender/Mortgagee:   Foster Bank, an Illinois Banking Corporation

In consideration of Ten Dollars and other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties, the Borrower and Lender do hereby agree to amend the above identified Note as follows:

Scanned and Verified by: BBCN\JK05706 on 3/19/2014

New amount of Note: **THREE HUNDRED TWENTY FOUR THOUSAND THREE HUNDRED TWO AND 00/100 UNITED STATES DOLLARS ($324,302.00)**

New Monthly Payment: $4,660.23

Terms: 84 Months

New Maturity Date: July 17, 2016

New Borrower: Chicago Car Collection, Inc.

All other terms and conditions of the Note shall remain the same.

Dated this 28th day of August, 2009

Lender/Mortgagee:

FOSTER BANK, an Illinois banking corporation

BY: _____
Tae Gil Lee
TITLE: SBA Loan Officer

Borrower: Chicago Car Collection, Inc.

BY: _____ PRESIDENT
James Hwang Jr., President & Secretary

Scanned and Verified by: BBCN\JK05706 on 3/19/2014

Loan: ▓▓▓▓▓▓▓                          G-1

EXHIBIT A

# AMENDMENT/EXTENSION
## TO
## ADJUSTABLE RATE INSTALLMENT NOTE

(1)      Date of Note:      September 3, 2004
            Amount of Note:   $150,000
            Interest Rate:     Prime + 2.25%
            Amortized Period: 12 Months
            Maturity Date:   September 3, 2005

(2)      Date of Note:      December 29, 2005
            Amount of Note:   $150,000
            Interest Rate:     Prime + 2.25%
            Amortized Period: 12 Months
            Maturity Date:   January 1, 2007

(3)      Date of Note:      July 17, 2006
            Amount of Note:   $325,000
            Interest Rate:     Prime + 2.25%
            Amortized Period: 12 Months
            Maturity Date:   July 17, 2007

(4)      Date of Note:      July 17, 2007
            Amount of Note:   $325,000
            Interest Rate:     Prime + 2.25%
            Amortized Period: 12 Months
            Maturity Date:   July 17, 2008

(5)      Date of Note:      July 17, 2008
            Amount of Note:   $325,000
            Interest Rate:     Prime + 2.25%
            Amortized Period: 12 Months
            Maturity Date:   July 17, 2009

(6)      Date of Note:      July 17, 2009
            Amount of Note:   $324,302
            Interest Rate:     Prime + 2.25%
            Amortized Period: 84 Months
            Maturity Date:   July 17, 2016

Borrower/Mortgagor:     Chicago Car Collection, Inc.

Lender/Mortgagee:       Foster Bank, an Illinois Banking Corporation

In consideration of Ten Dollars and other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties, the Borrower and Lender do hereby agree to amend the above identified Note as follows:

New Maturity Date:       **July 17, 2024**
Amortized Period:        **180 Months**
New Monthly Payment: **$2,649.82**

All other terms and conditions of the Note shall remain the same.

Dated this 8th day of September, 2009

Lender/Mortgagee:

FOSTER BANK, an Illinois banking corporation

BY: _____
            Tae Gil Lee
TITLE: SBA Loan Officer

Borrower:
Chicago Car Collection, Inc.

BY: _____
James Hwang Jr., PRESIDENT & SECRETARY

Bank of Hope v. Kyung Eun Hwang a/k/a Kyung E. Hwang, *ET AL*

**EXHIBIT D**



# FOSTER BANK
*Serving you first*

August 17, 2009

U.S. Small Business Administration
Fresno Servicing Center
2719 North Air Fresno Drive, Suite 107
Fresno, CA 93727

Re: **Request for SBA's Consent to Convert & Extend**
**Chicago Car Collection, Inc. f/k/a Luxury Automotive Wholesalers, Inc.**
**Loan Number: EXP** ████████████

Dear Sir or Madam:

On August 11, 2009 with SBA Guaranty, Foster Bank approved to convert the existing amount $324,302 for SBA*Express* loan to the above-mentioned borrower. Foster Bank collateralized first position UCC/Security Agreement against all business assets of Chicago Car Collection, Inc. f/k/a Luxury Automotive Wholesalers, Inc. located at 9040 North Waukegan Road, Morton Grove, IL 60053 and First mortgage against a residential property located at 5455 North Sheridan #2605, Chicago, IL. James Hwang Jr., James Hwang, and Kyung Eun Hwang are personal guarantors of the Loan.

The loan matured in July of 2009, and the borrower requests to renew to convert the loan under the following terms and conditions:

|  |  |
|---|---|
| Amount: | $324,302.00 (SBA*Express* Loan) |
| Rate: | Prime + 2.25% |
| Term: | 7 years |
| New maturity date: | 7/17/2016 |
| Payment: | Monthly principal and interest payments of $4,660.23 |
| Collateral: | 1) First mortgage against a residential property located at 5455 North Sheridan #2605, Chicago, IL |
|  | 2) First position UCC/Security Agreement against all business assets against Chicago Car Collection, Inc. f/k/a Luxury Automotive Wholesalers, Inc. located at 9040 North Waukegan Road, Morton Grove, IL 60053 |

Foster Bank approved the borrower's request based on the fact that the borrower has been making payments promptly and excellent past payment history. There exists no adverse circumstances to the best of our knowledge. There isn't remaining SBA GTE Fee.

The borrower name will be changed from Luxury Automotive Wholesalers, Inc. to Chicago Car Collection, Inc. We will provide Form 2237 to request a change in name. The company was established by the principal in July 2004. The principal, Mr. Hwang Jr., changed the company name to Chicago Car Collection, Inc. Therefore, the subject loan should be changed under the name of Chicago Car Collection, Inc.

I appreciate your cooperation in this matter. If you have any question, please contact me at (773) 279-4955

Sincerely,

Tae Gil Lee
SBA Loan Officer

BANK OF HOPE V. KYUNG EUN HWANG A/K/A KYUNG E. HWANG,
*ET AL*

**EXHIBIT E**



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE



| SBA Loan # | ████████ |
|---|---|
| SBA Loan Name | Luxury Automotive Wholesalers, Inc. |
| Guarantor | James Hwang Jr. |
| Borrower | Luxury Automotive Wholesalers, Inc. |
| Lender | Foster Bank |
| Date | December 29, 2005 |
| Note Amount | 150,000.00 |

1. **GUARANTEE:**

   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. **NOTE:**

   The "Note" is the promissory note dated ___December 29, 2005___ in the principal amount of ***********************One Hundred Fifty Thousand and No/100*********************************************** Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. **DEFINITIONS:**

   "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

SBA Form 148 (10/98) Previous editions obsolete.

Bankers Systems, Inc., St. Cloud, MN

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:



11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this
Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_____

_____

_____     12/29/05
James Hwang Jr.

_____

_____

_____

SBA Form 148 (10/98) Previous editions obsolete.

Bankers Systems, Inc., St. Cloud, MN



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| | |
|---|---|
| SBA Loan # | E█████████ |
| SBA Loan Name | Luxury Automotive Wholesalers, Inc. |
| Guarantor | James Hwang Jr. |
| Borrower | Luxury Automotive Wholesalers, Inc. |
| Lender | Foster Bank |
| Date | July 17, 2006 |
| Note Amount | 325,000.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated _____July 17, 2006_____ in the principal amount of
***********************Three Hundred Twenty Five Thousand and No/100*********************** Dollars,
from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.  Release any Borrower or any guarantor of the Note;

D.  Compromise or settle with the Borrower or any guarantor of the Note;

E.  Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.  Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.  Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.  Guarantor waives all rights to:

1)  Require presentment, protest, or demand upon Borrower;

2)  Redeem any Collateral before or after Lender disposes of it;

3)  Have any disposition of Collateral advertised; and

4)  Require a valuation of Collateral before or after Lender disposes of it.

B.  Guarantor waives any notice of:

1)  Any default under the Note;

2)  Presentment, dishonor, protest, or demand;

3)  Execution of the Note;

4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5)  Any change in the financial condition or business operations of Borrower or any guarantor;

6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7)  The time or place of any sale or other disposition of Collateral.

C.  Guarantor waives defenses based upon any claim that:

1)  Lender failed to obtain any guarantee;

2)  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3)  Lender or others improperly valued or inspected the Collateral;

4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

SBA Form 148 (10/98) Previous editions obsolete.                                                                    Page 2/5

Wolters Kluwer Financial Services, St. Cloud, MN

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

James Hwang Jr.

7/17/06

SBA Form 148 (10/98) Previous editions obsolete.

Wolters Kluwer Financial Services, St. Cloud, MN



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | E███████ |
|---|---|
| SBA Loan Name | Luxury Automotive Wholesalers, Inc. |
| Guarantor | James R. Hwang<br>Kyung E. Hwang<br>James Hwang Jr. |
| Borrower | Luxury Automotive Wholesalers, Inc. |
| Lender | Foster Bank |
| Date | July 17, 2007 |
| Note Amount | 325,000.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated ___July 17, 2007_____ in the principal amount of
*************************Three Hundred Twenty Five Thousand and No/100************************_____ Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

SBA Form 148 (10/98) Previous editions obsolete.

Wolters Kluwer Financial Services, St. Cloud, MN

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.


5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.


6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

   1) Require presentment, protest, or demand upon Borrower;

   2) Redeem any Collateral before or after Lender disposes of it;

   3) Have any disposition of Collateral advertised; and

   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

   1) Any default under the Note;

   2) Presentment, dishonor, protest, or demand;

   3) Execution of the Note;

   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

   5) Any change in the financial condition or business operations of Borrower or any guarantor;

   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

   1) Lender failed to obtain any guarantee;

   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

   3) Lender or others improperly valued or inspected the Collateral;

   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

SBA Form 148 (10/98) Previous editions obsolete.

Wolters Kluwer Financial Services, St. Cloud, MN

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

SBA Form 148 (10/98) Previous editions obsolete.

Wolters Kluwer Financial Services, St. Cloud, MN

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

By JIM HWANG ATTORNEY IN FACT          7/17/07

Kyung E. Hwang

By JIM HWANG ATTORNEY IN FACT          7/17/07

James R. Hwang

7/17/07

James Hwang Jr.

SBA Form 148 (10/98) Previous editions obsolete.                    Page 5/5

Wolters Kluwer Financial Services, St. Cloud, MN



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | ████████████ |
|---|---|
| SBA Loan Name | Luxury Automotive Wholesalers, Inc. |
| Guarantor | James R. Hwang<br>Kyung E. Hwang<br>James Hwang Jr. |
| Borrower | Luxury Automotive Wholesalers, Inc. |
| Lender | Foster Bank |
| Date | July 17, 2008 |
| Note Amount | 325,000.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated _____July 17, 2008_____ in the principal amount of
**************************Three Hundred Twenty Five Thousand and No/100****************************** Dollars,
from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.
"Loan" means the loan evidenced by the Note.
"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.
"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_Kyung E. Hwang By James Hwang Jr. Her Attorney in Fact_    7/17/08
Kyung E. Hwang

_James R. Hwang By James Hwang Jr. His Attorney in Fact_    7/17/08
James R. Hwang

_President_    7/17/08
James Hwang Jr.

SBA Form 148 (10/98) Previous editions obsolete.

Wolters Kluwer Financial Services, St. Cloud, MN



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | ▓▓▓▓▓▓▓ |
|---|---|
| SBA Loan Name | CHICAGO CAR COLLECTION, INC. |
| Guarantor | JAMES HWANG JR.<br>JAMES HWANG<br>KYUNG EUN HWANG |
| Borrower | CHICAGO CAR COLLECTION, INC. |
| Lender | Foster Bank |
| Date | 08/28/2009 |
| Note Amount | 324,302.00 |

1. GUARANTEE:

   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

   The "Note" is the promissory note dated _____08/28/2009_____ in the principal amount of
   ********THREE HUNDRED TWENTY FOUR THOUSAND THREE HUNDRED TWO AND NO/100********** Dollars,
   from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

   "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.
   "Loan" means the loan evidenced by the Note.
   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.
   "SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

Wolters Kluwer Financial Services, St. Cloud, MN

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

## 7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

## 8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

## 9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

Wolters Kluwer Financial Services, St. Cloud, MN

10. STATE-SPECIFIC PROVISIONS:

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

CHICAGO CAR COLLECTION, INC.

| | |
|---|---|
| PRESIDENT | 8/28/2009 |
| JAMES HWANG JR. | |
| | 8/28/2009 |
| JAMES HWANG | |
| | 8/28/2009 |
| KYUNG EUN HWANG | |

<u>BANK OF HOPE V. KYUNG EUN HWANG A/K/A KYUNG E. HWANG,</u>
<u>*ET AL*</u>

**EXHIBIT F**



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | |
|---|---|
| SBA Loan Name | Luxury Automotive Wholesalers, Inc. |
| Guarantor | Kyung E. Hwang |
| Borrower | Luxury Automotive Wholesalers, Inc. |
| Lender | Foster Bank |
| Date | December 29, 2005 |
| Note Amount | 150,000.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated    December 29, 2005                              in the principal amount of
************************One Hundred Fifty Thousand and No/100****************************************************                    Dollars,
from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

SBA Form 148 (10/98) Previous editions obsolete.

Bankers Systems, Inc., St. Cloud, MN

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_____          _____

_____          _____

_____          12/29/05
Kyung E. Hwang

_____          _____

_____          _____

_____          _____

WITNESS BY

_____

SBA Form 148 (10/98) Previous editions obsolete.

Bankers Systems, Inc., St. Cloud, MN


# UNCONDITIONAL GUARANTEE

| SBA Loan # | ▬▬▬▬▬▬▬ |
|---|---|
| SBA Loan Name | Luxury Automotive Wholesalers, Inc. |
| Guarantor | James R. Hwang<br>Kyung E. Hwang<br>James Hwang Jr. |
| Borrower | Luxury Automotive Wholesalers, Inc. |
| Lender | Foster Bank |
| Date | July 17, 2007 |
| Note Amount | 325,000.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated _____July 17, 2007_____ in the principal amount of ************************Three Hundred Twenty Five Thousand and No/100************************** Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

SBA Form 148 (10/98) Previous editions obsolete.

Wolters Kluwer Financial Services, St. Cloud, MN

4. **LENDER'S GENERAL POWERS:**

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. **FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

A. Guarantor waives all rights to:

   1) Require presentment, protest, or demand upon Borrower;

   2) Redeem any Collateral before or after Lender disposes of it;

   3) Have any disposition of Collateral advertised; and

   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

   1) Any default under the Note;

   2) Presentment, dishonor, protest, or demand;

   3) Execution of the Note;

   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

   5) Any change in the financial condition or business operations of Borrower or any guarantor;

   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

   1) Lender failed to obtain any guarantee;

   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

   3) Lender or others improperly valued or inspected the Collateral;

   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

SBA Form 148 (10/98) Previous editions obsolete.

Wolters Kluwer Financial Services, St. Cloud, MN

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

SBA Form 148 (10/98) Previous editions obsolete.

Wolters Kluwer Financial Services, St. Cloud, MN

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

By JIM HWANG ATTORNEY IN FACT    7/17/07
Kyung E. Hwang

By JIM HWANG ATTORNEY IN FACT    7/17/07
James R. Hwang

7/17/07
James Hwang Jr.

SBA Form 148 (10/98) Previous editions obsolete.    Page 5/5

Wolters Kluwer Financial Services, St. Cloud, MN



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | ███████████ |
|---|---|
| SBA Loan Name | Luxury Automotive Wholesalers, Inc. |
| Guarantor | James R. Hwang<br>Kyung E. Hwang<br>James Hwang Jr. |
| Borrower | Luxury Automotive Wholesalers, Inc. |
| Lender | Foster Bank |
| Date | July 17, 2008 |
| Note Amount | 325,000.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated ____July 17, 2008_____ in the principal amount of
*************************Three Hundred Twenty Five Thousand and No/100***************************** Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

   1) Require presentment, protest, or demand upon Borrower;

   2) Redeem any Collateral before or after Lender disposes of it;

   3) Have any disposition of Collateral advertised; and

   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

   1) Any default under the Note;

   2) Presentment, dishonor, protest, or demand;

   3) Execution of the Note;

   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

   5) Any change in the financial condition or business operations of Borrower or any guarantor;

   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

   1) Lender failed to obtain any guarantee;

   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

   3) Lender or others improperly valued or inspected the Collateral;

   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Kyung E. Hwang By James Hwang Jr. Her Attorney In Fact     7/17/08
Kyung E. Hwang

James R. Hwang By James Hwang Jr. His Attorney In Fact     7/17/08
James R. Hwang

President     7/17/08
James Hwang Jr.

<u>B<span>ANK OF</span> H<span>OPE</span> v. K<span>YUNG</span> E<span>UN</span> H<span>WANG A</span>/<span>K</span>/<span>A</span> K<span>YUNG</span> E. H<span>WANG</span>,</u>
<u>*ET AL*</u>

**EXHIBIT G**



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | EXP██████████ |
|---|---|
| SBA Loan Name | Luxury Automotive Wholesalers, Inc. |
| Guarantor | James R. Hwang<br>Kyung E. Hwang<br>James Hwang Jr. |
| Borrower | Luxury Automotive Wholesalers, Inc. |
| Lender | Foster Bank |
| Date | July 17, 2007 |
| Note Amount | 325,000.00 |

## 1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

## 2. NOTE:

The "Note" is the promissory note dated ___July 17, 2007_____ in the principal amount of

*************************Three Hundred Twenty Five Thousand and No/100***************************_____ Dollars,

from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

## 3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

SBA Form 148 (10/98) Previous editions obsolete.

Wolters Kluwer Financial Services, St. Cloud, MN

## 4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

## 5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

SBA Form 148 (10/98) Previous editions obsolete.

Wolters Kluwer Financial Services, St. Cloud, MN

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

Wolters Kluwer Financial Services, St. Cloud, MN

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_By JIM HWANG ATTORNEY INFACT_    7/17/07

Kyung E. Hwang

_By JIM HWANG ATTORNEY INFACT_    7/17/07

James R. Hwang

7/17/07

James Hwang Jr.



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | E█████████ |
|---|---|
| SBA Loan Name | Luxury Automotive Wholesalers, Inc. |
| Guarantor | James R. Hwang<br>Kyung E. Hwang<br>James Hwang Jr. |
| Borrower | Luxury Automotive Wholesalers, Inc. |
| Lender | Foster Bank |
| Date | July 17, 2008 |
| Note Amount | 325,000.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated ___July 17, 2008___ in the principal amount of ****************************Three Hundred Twenty Five Thousand and No/100****************************** Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Kyung E. Hwang By James Hwang Jr Her Attorney in fact  7/17/08
Kyung E. Hwang

James R. Hwang By James Hwang Jr His Attorney in fact  7/17/08
James R. Hwang

PRESIDENT  7/17/08
James Hwang Jr.



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | |
|---|---|
| SBA Loan Name | CHICAGO CAR COLLECTION, INC. |
| Guarantor | JAMES HWANG JR.<br>JAMES HWANG<br>KYUNG EUN HWANG |
| Borrower | CHICAGO CAR COLLECTION, INC. |
| Lender | Foster Bank |
| Date | 08/28/2009 |
| Note Amount | 324,302.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated    08/28/2009                                    in the principal amount of
\*\*\*\*\*\*\*\*\*THREE HUNDRED TWENTY FOUR THOUSAND THREE HUNDRED TWO AND NO/100\*\*\*\*\*\*\*\*\*\*                Dollars,
from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple
notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.
"Loan" means the loan evidenced by the Note.
"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or
anyone who pledges Collateral.
"SBA" means the Small Business Administration, an Agency of the United States of America.

Wolters Kluwer Financial Services, St. Cloud, MN

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

   1) Require presentment, protest, or demand upon Borrower;

   2) Redeem any Collateral before or after Lender disposes of it;

   3) Have any disposition of Collateral advertised; and

   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

   1) Any default under the Note;

   2) Presentment, dishonor, protest, or demand;

   3) Execution of the Note;

   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

   5) Any change in the financial condition or business operations of Borrower or any guarantor;

   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

   1) Lender failed to obtain any guarantee;

   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

   3) Lender or others improperly valued or inspected the Collateral;

   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

Wolters Kluwer Financial Services, St. Cloud, MN

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

SBA Form 148 (10/98) Previous editions obsolete.                                                                 Page 3/6

Wolters Kluwer Financial Services, St. Cloud, MN

10. STATE-SPECIFIC PROVISIONS:

11.  GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.  GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

CHICAGO CAR COLLECTION, INC.

| | |
|---|---|
| PRESIDENT | 8/28/2009 |
| JAMES HWANG JR. | |
| | 8/28/2009 |
| JAMES HWANG | |
| | 8/28/2009 |
| KYUNG EUN HWANG | |